IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

John K. Henricks,

    Plaintiff,

v.

Pickaway Correctional Institution, *et al.*,

    Defendants

Case No. 08-cv-0580

Judge Smith

Magistrate Judge Abel

**REPORT AND RECOMMENDATION**

Plaintiff John K. Henricks, prisoner #497-528 ("Plaintiff"), an inmate at the Pickaway Correctional Institution ("PCI"), brings this action under 42 U.S.C. § 1983 against several state agencies and employees, including the Pickaway Correctional Institution, Ohio Department of Rehabilitation and Corrections ("ODRC"), Corrections Medical Center ("CMC"), James Erwin, Alan Lazaroff, Tobie Valentine, Roger Kirk, PCI Medical Director Dr. Gonzales, and an Officer Maynard. This matter is before the Court on the named Defendants' Motion to Dismiss (doc. 17) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

On August 19, 2006 Plaintiff reported to the Pickaway Correctional Institution medical bay with complaints of flu-like symptoms including nausea and vomiting. A nurse, Defendant Roger Kirk, examined Plaintiff for possible appendicitis, and eventually concluded that Plaintiff was suffering from the flu. The following day Plaintiff returned to med-bay complaining of the same symptoms

1

and also of severe abdominal pain.  Plaintiff's condition had worsened significantly, and Defendant PCI Medical Director Dr. Gonzales determined that he was in need of further medical attention due to the possibility of appendicitis.  Plaintiff was transferred to the OSU Medical Center.  However, upon arrival at the OSU Medical Center, Defendant PCI Transportation Officer Maynard allegedly refused to remove Plaintiff's restraints to permit the attending E. R. physician to evaluate Plaintiff's condition.  The delay resulting from this disagreement, Plaintiff argues, endangered his life, as it was later determined that his appendix had already ruptured.

After treatment at OSU Medical Center, Plaintiff was taken to Correctional Medical Center ("CMC") for recovery.  There, alleges Plaintiff, wound care nurses improperly ignored his wounds or cleaned them with ordinary tap water, which resulted in a dangerous and painful *staphylococcus aureus* infection.  Plaintiff further alleges that upon his return to PCI Dr. Gonzales refused to permit him to take Neurontin, a painkilling medication which had been prescribed to him at OSU Medical Center, and instead provided only less effective ibuprofen.

Defendants argue that claims against the institutional defendants (PCI, ODRC, and CMC) are barred by the Eleventh Amendment and by the fact that 42 U.S.C. §1983 applies only to natural persons, and that Plaintiff fails to state a claim upon which relief can be granted against the individual defendants.  For the reasons stated below, it is **RECOMMENDED** that the Defendants' Motion be **GRANTED IN PART** and **DENIED IN PART**, and that this action be **DISMISSED**

2

as it relates to PCI, ODRC, CMC, Alan Lazaroff, Tobie Valentine, James Erwin, and Roger Kirk.

**Standard of Review**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled material allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982); *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 n.3 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). The court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss. *See Kugler v. Helfant*, 421 U.S. 117, 125-26 n.5 (1975); *Smart*, 580 F.2d at 218 n.3; *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975). However, a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). In reading a complaint a court will indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

### Institutional Defendants

42 U.S.C. §1983, under which Plaintiff brings his claims, states in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

For a defendant to be held liable for any alleged deprivation of rights under §1983, the defendant would have to be deemed a "person". The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Will v. Michigan Dept. of State Police*, 591 U.S. 58, 71 (1989). Pickaway Correctional Institution, the Ohio Department of Rehabilitation and Corrections, and the Corrections Medical Center are agencies of the State of Ohio. Thus, they cannot be held liable under §1983. Furthermore, the Eleventh Amendment to the United States Constitution, which prohibits federal courts from granting money judgments or injunctive relief against state agencies, would also bar any suit against these defendants under §1983. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464 (1945); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) (holding that "[i]t is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is

named as the defendant is proscribed by the Eleventh Amendment"). Therefore, Plaintiff's claims against the state agency defendants should be dismissed.

**Alan Lazaroff, Tobie Valentine, and James Erwin**

Alan Lazaroff is the current warden of PCI. James Erwin is a former warden of PCI. Tobie Valentine is the health care administrator of PCI. Plaintiff generally alleges against each of these that they had a duty to provide adequate medical care to prisoners, and failed to do so. Plaintiff does not plead any action or inaction by these three individual defendants, but rather implies that they were responsible for the alleged misdeeds committed by persons under their authority.

Liability under 42 U.S.C. §1983 will not be imposed upon supervisory personnel absent some showing that the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a §1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir. 1984), citing *Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982).

Here, Plaintiff has made no allegation at all that Lazaroff, Valentine, or Erwin ever directly participated in the wrongdoing he alleges. He has not made any allegation, except in the most general terms, that they encouraged such conduct, or that they created policies or procedures which mandated or led to such

5

conduct. Consequently, Plaintiff has failed to state a claim under 42 U.S.C. §1983 against them.

### Roger Kirk, Officer Maynard, and Dr. Gonzales

Roger Kirk was, at the relevant time, a nurse employed at PCI. Officer Maynard is a PCI corrections officer. Dr. Gonzales is the medical director of PCI. Plaintiff alleges against these persons that they violated his civil rights by exhibiting a deliberate indifference to his serious medical needs, in contravention of the Eigth Amendment to the United States Constitution. Roger Kirk allegedly did so by failing to timely diagnose Plaintiff with appendicitis. Officer Maynard allegedly did so by refusing to remove Plaintiff's restraints to permit an E.R. attending physician to examine him. Dr. Gonzales allegedly did so by withholding painkilling medication from him.

Under some circumstances, refusal to attend to the medical needs of prisoners can be violative of constitutional rights. In *Estelle v. Gamble*, 429 U.S. 97, the United States Supreme Court held that the Eighth Amendment requires the government to "provide medical care for those whom it is punishing by incarceration". Id. at 103. It further noted that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

6

Id. at 104.

However, the failure to attend to a serious medical needs only rises to the level of deprivation of civil rights where both an objective and a subjective requirement has been met. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A plaintiff must objectively show the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Furthermore, he must satisfy the subjective requirement by showing that prison officials acted with "deliberate indifference" to the serious medical need. An official does so where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008), quoting *Farmer*, 511 U.S. at 837.

The question at issue is therefore whether Plaintiff has adequately stated a claim that Defendants violated his civil rights in this fashion. Here, Plaintiff has undoubtedly alleged that a sufficiently serious medical need existed. The parties do not dispute that his appendicitis was a dangerous condition. Furthermore, Plaintiff clearly alleges that his post-operative pain was a serious medical need; he claims that on occasion it has caused him to fall or collapse. (Doc. 3 at 42.)

With respect to Roger Kirk, however, Plaintiff does not allege the subjective requirement that the nurse acted with "deliberate indifference" to his serious medical need. Plaintiff alleges that Kirk at first misdiagnosed his abdominal pain as influenza, and that he persisted in this erroneous diagnosis the next day when

7

Plaintiff returned to med-bay. (Doc. 3 at 34-35.) If Kirk had correctly recognized his appendicitis at Plaintiff's original visit, Plaintiff argues, he could have received timely medical care before his appendix ruptured and caused complications.

The United States Supreme Court has recognized, however, that deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A failure to correctly diagnose a serious condition -- or a failure to investigate a medical condition more closely -- may sometimes constitute medical malpractice, but "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105. Plaintiff himself alleges that, as he was about to leave med-bay upon his return visit, another nurse arrived, who "examined the Plaintiff himself, showing Nurse Kirk the proper methods in ruling out appendicitis". (Doc. 3 at 35.) Elsewhere, he alleges "R. N. Kirk was not performing the usual procedure correctly" and that the second nurse "determined that Nurse Kirk was not properly examining Mr. Henricks". (Doc. 3 at 7.) Plaintiff may allege that Kirk was inept, incompetent, negligent, or ignorant. He does not, however, allege that Kirk was deliberately indifferent to his condition. Plaintiff therefore does not state a claim under 42 U.S.C. §1983 against Roger Kirk.

With respect to Officer Maynard, Plaintiff alleges:

> After many unnecessary delays, Plaintiff entered O.S.U.'s E.R. at 6:32 a.m. C.O. Maynard (transport officer 1) adamantly refused, dispite [sic] E.R. physician's repeated requests, to remove prisoner restraints so that Plaintiff could be undressed for proper examination. This officer did not know or did not care for departmental policy and/or

>procedure, as he stated that he could not remove restraints until the inmate was officially admitted.

(Doc. 3 at 35.)

According to Plaintiff's complaint, he spent forty-five minutes on an examination table at the hospital with a ruptured and gangrenous appendix while a corrections officer and physician argued about whether or not his restraints could be removed to permit an examination of his abdomen.[1] This, he claims, caused him great pain and endangered his life. Plaintiff's allegations against Officer Maynard, as stated, satisfy the subjective element of a claim for deliberate indifference to serious medical need. He claims that Officer Maynard knew of and disregarded a substantial risk of harm to his safety, by refusing for a long period to permit Plaintiff to be properly examined, despite having been rushed to the hospital. Plaintiff's allegations do give rise to a colorable claim of deprivation of his civil rights under the Eighth Amendment, and he can therefore bring suit under 42 U.S.C. §1983 against Officer Maynard.

With respect to Dr. Gonzales, Plaintiff alleges that after his abdominal surgery he was prescribed the painkiller Neurontin by a physician at CMC and was informed at the time that ibuprofen would be totally ineffective. (Doc. 3 at 38.) Upon his return to PCI, however, Dr. Gonzales, the medical director, ordered his Neurontin discontinued, replacing it with ibuprofen. He alleges that on several

---

[1] Plaintiff's Complaint alleges that Officer Maynard refused to remove Plaintiff's restraints until he were officially admitted to the hospital, and that the unnamed physician refused to admit Plaintiff to the hospital until he could examine Plaintiff without his restraints. Doc. 3 at 35.

9

followup visits at CMC, physicians have ordered Neurontin for his pain, and that on each occasion Dr. Gonzales has barred this drug. (Doc. 3 at 42.) On one occasion, Plaintiff states, a second PCI physician began Plaintiff on Neurontin again, but when next he saw Dr. Gonzales, she once again ordered it stopped. (Doc. 3 at 44.) He alleges that the ibuprofen he has been given instead is ineffective, and that neurologists have informed him that only a drug like Neurontin would relieve his pain.

Defendants correctly note that "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments". *Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). They observe that the burden of proof in such cases is fairly substantial, in that an inmate complaining about his course of treatment, such as receiving one medication instead of another, must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

Plaintiff does not claim that Dr. Gonzales has refused to treat him; his complaint is instead that she has refused to properly treat him. Plaintiff's allegations are somewhat unusual in that he claims that other physicians have recommended Neurontin to him, ordered it for him, and informed him that nothing else will suffice, but that Dr. Gonzales blocked all these measures in favor of ineffective ibuprofen. He argues that Dr. Gonzales knows of his debilitating pain

and its proper treatment and deliberately refuses to administer to him the only medication which will relieve it.[2] This claim does rise to the level of an allegation of deliberate indifference to a serious medical need. Plaintiff thus has stated a colorable claim under 42 U.S.C. §1983 against Dr. Gonzales.

Conclusion

Plaintiff's claims against Pickaway Correctional Institution, the Ohio Department of Rehabilitation and Corrections, and Corrections Medical Center are barred by sovereign immunity and the statutory requirement that suits under 42 U.S.C. §1983 can only be brought against "persons". Plaintiff's claims against Alan Lazaroff, Tobie Valentine, and James Erwin are barred because he fails to allege that any of these persons committed any wrongdoing against him. Plaintiff's claims against Roger Kirk, R.N. are barred because he alleges, at most, negligence, which is not actionable under 42 U.S.C. §1983.

Plaintiff's allegations against Officer Maynard and Dr. Gonzales do state claims for violation of his Eighth Amendment rights, and should not be dismissed. This analysis does not evaluate whether or not Plaintiff's allegations against Officer

---

[2] Plaintiff does allege that Dr. Gonzales had evaluated and rejected Neurontin, both because she claimed it would be ineffective and because she claimed that it was not approved for such use. Doc. 3 at 40, 42. Plaintiff's claim is, apparently, that this medical opinion is so erroneous that it amounts to deliberate indifference.

11

Maynard and Dr. Gonzales are true, but rather whether, if they were true, they would be legitimate grounds for suit.

For the foregoing reasons, I **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**, and that this action be **DISMISSED** only with respect to Defendants **Pickaway Correctional Institution**, the **Ohio Department of Rehabilitation and Corrections**, **Corrections Medical Center**, **Alan Lazaroff**, **Tobie Valentine**, **James Erwin**, and **Roger Kirk**, but not with respect to Officer Maynard or Dr. Gonzales.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgement of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).

                                               s/Mark R. Abel
                                               United States Magistrate Judge