IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN K. HENRICKS,                           :

        Plaintiff                    :       Civil Action 2:08-cv-580

v.                                          :       Judge Smith

PICKAWAY CORRECTIONAL                       :       Magistrate Judge Abel
INSTITUTION, *et al.*,
                                            :
        Defendants.

ORDER

This matter is before the Court pursuant to Plaintiff's Objections (Doc. 69) to the January 7, 2009 Report and Recommendation of the Magistrate Judge (Doc. 61). For the reasons set forth herein, Plaintiff's objections are overruled, and the report and recommendation is adopted.[1]

The Report and Recommendation sets forth Plaintiff's claims in detail. On August 19, 2006, Plaintiff, at the time an inmate at Pickaway Correctional Institution ("PCI"), reported to medbay complaining of flu-like symptoms. A nurse, Roger Kirk, examined him and concluded that he had the flu, sending him back to his cell. Early the next morning, Plaintiff returned, with the assistance of other

---

[1] This is the second of two reports on separate motions to dismiss two groups of defendants – those affiliated with Ohio State University Medical Center, and those affiliated with the Ohio prison system. The Ohio State University Medical Center defendants were dismissed by the Court's Order of January 7, 2009. (Doc. 58.)

1

inmates, to sickbay, complaining of severe abdominal pain. Plaintiff asserts that Roger Kirk was again on duty, and informed him without examining him that he had the flu and was to return to his housing unit. However, another nurse came on shift, examined him, and called the prison medical director to report suspicions of appendicitis. Plaintiff was then transported to OSU Medical Center by PCI Transportation Officer Maynard, who upon arrival there allegedly refused to remove Plaintiff's restraints to permit the attending E.R. physician to evaluate Plaintiff's condition. After this disagreement was resolved, Plaintiff was determined to have a ruptured appendix and immediately operated upon.

During a period of recovery at Correctional Medical Center ("CMC"), Plaintiff alleges that three unknown nurses improperly ignored his wounds or cleaned them with tap water, causing an infection. Then, upon his return to PCI, the medical director, Dr. Gonzales, allegedly refused to permit Plaintiff to take the painkiller he had been prescribed at OSU Medical Center. Instead, he was provided only with less effective ibuprofen.

Plaintiff named as defendants in this action PCI, CMC, the Ohio Department of Rehabilitation and Corrections ("ODRC"), James Erwin, a former warden of PCI, Alan Lazeroff, the current warden of PCI, Tobie Valentine, the health care administrator of PCI, Dr. Gonzales, Officer Maynard, Roger Kirk, and three unknown nurses at PCI.[2] All of these defendants moved to dismiss, on grounds that

---

[2] Plaintiff also named OSU Medical Center and four doctors there. These defendants were dismissed by the Court's Order of January 7, 2009. (Doc. 58.)

the institutional defendants could not be sued under 42 USC §1983 (and under the Eleventh Amendment), and that Plaintiff had failed to state a claim against the individual defendants upon which the Court could grant relief. (Doc. 17.) In the Report and Recommendation, the Magistrate Judge granted the motion to dismiss in part. (Doc. 61.) He found that dismissal was proper against the institutional defendants on the stated grounds. He further found that Plaintiff had stated a claim against Officer Maynard and Dr. Gonzalez, but not against Tobie Valentine, James Erwin, Alan Lazeroff, or Roger Kirk, for deliberate indifference to serious medical needs in violation of Plaintiff's Eighth Amendment rights. Plaintiff has now filed objections to the Report and Recommendation.

The majority of Plaintiff's argument is apparently in support of his simultaneously-filed motion for leave to amend (Doc. 68). He claims that various officers at CMC and PCI were aware of, and failed to correct, various unconstitutional health care policies and practices in the Ohio state corrections system. The Magistrate Judge will address Plaintiff's request to amend his complaint elsewhere, as this line of argument as it applies to prospective new party defendants is not relevant to a review of Defendants' motion to dismiss existing defendants. Plaintiff, however, also argues in passing that Roger Kirk routinely engaged in misconduct by making decisions which should have been left to physicians, that Plaintiff filed formal objections to this misconduct with the State Medical Board of Ohio, and that the ODRC eventually fired him because of his misconduct. Plaintiff argues that Defendants Valentine (as PCI's health care

3

administrator) and Erwin and Lazeroff (as past and present wardens of PCI), were ultimately responsible for permitting Kirk to endanger the lives of prisoners. (Doc. 69 at 11.) He also argues that, contrary to the Magistrate Judge's findings, Roger Kirk acted with deliberate indifference towards Plaintiff's condition, not with simple negligence.

**Defendants Valentine, Erwin, and Lazeroff**

The Report and Recommendation found, with respect to Defendants Valentine, Erwin, and Lazeroff, that Plaintiff had failed to state a claim against them under 42 U.S.C. §1983 because he had failed to allege that they had participated in the alleged misconduct at issue. Citing *Bellamy v. Bellamy*, 729 F.2d 416 (6th Cir. 1984), the Magistrate Judge stated that liability under 42 U.S.C. §1983 will not be imposed upon supervisory personnel absent some showing that the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a §1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* at 420. Here, he held, Plaintiff has made no allegation that these three defendants ever participated in or condoned any of the conduct of which Plaintiff complains.

Plaintiff, in his Objections, states that he seeks to hold "[t]he individual government officials responsible for establishing and/or enforcing 'Policies', with respect to prisoner health care, with respect to security, with appropriate screening,

4

training, and so on, [and that they can] be held liable, for the breakdowns and failures within the agencies and/or departments and/or facilities under their repective supervision." (Doc. 69 at 2-3.) As noted above, he also seeks to amend his complaint to join six officials of CMC and ODRC in addition to Valentine, Erwin, and Lazeroff, and states that he "will establish that these named policy-making officials were subjectively aware of many unconstitutional practices throughout the State's correctional facilities, that they were given sufficient time and opportunity to 'fix' the problems identified, yet failed miserably to do so." (Doc. 39 at 3.)

At the beginning of his Complaint, Plaintiff identified the defendants individually. Of Erwin and Lazaroff he states that they "had an ongoing duty to provide adequate medical care to prisoners entrusted to his custody during court-imposed confinement, did recklessly, knowingly, and willfully neglect to provide adequate medical needs ... then exhibited a deliberate indifference to said plaintiff's pain and suffering." Of Valentine, he states similarly that he, "having an ongoing duty to implement policies and/or customs that provide for adequate medical care to prisoners entrusted to the care and custody of P.C.I. during court-imposed confinement, did recklessly, knowingly, and willfully neglect to provide adequate medical care needs... and now exhibits a continuing deliberate indifference to said plaintiff's pain and suffering." (Doc. 3 at 19-20.) His Complaint appears to make no further reference to Erwin, Lazaroff, or Valentine, or their alleged wrongdoing.

Plaintiff cites extensive caselaw for the proposition that a person with authority can establish or condone policies or customs which are unconstitutional,

and that such practices can form the bases for claims under 28 U.S.C. §1983. However, as the Magistrate Judge noted, he has offered no description or explanation of what "policies and procedures" Valentine, Erwin, or Lazeroff put in place which caused, encouraged, or exacerbated his condition, aside from reiterated claims that everything involving health care which happens at PCI is under their control and ultimate responsibility. He does not, for instance, suggest that Dr. Gonzalez' refusal to give him more effective medication was due to policies established by her superiors. He does not suggest that Roger Kirk's failure to identify his condition as appendicitis was caused by some custom at PCI, rather than Kirk's own actions.[3] He does not suggest that Officer Maynard's refusal to promptly remove his restraints was due to PCI procedure.[4]

The purpose of a legal complaint is to place defendants on notice as to what conduct they are accused of having committed. Plaintiff's Complaint here – the sufficiency of which is being tested by Defendants' motion to dismiss – fails to do so. Appendix A to Plaintiff's Objections (Doc. 70), a document entitled "Stipulations For Injunctive Relief: Report: ODRC-Medical Services, Final Report of Findings",

---

[3] Plaintiff argues in his Objections that Kirk's superiors, including Gonzalez, Valentine, Erwin, and Lazeroff, permitted Kirk's ongoing misconduct. "Why such action was condoned for such a long time one can only imagine. Certainly, departmental 'policy' must have played a key role." Doc. 69 at 11. This speculation as to the various defendants' culpability does not appear, however, in his Complaint.

[4] Plaintiff actually claims the opposite in this instance – that Defendant Maynard caused injury to him by *failing* to follow "departmental policy and/or procedure." (Doc. 3 at 35.)

6

appears to summarize certain investigatory findings made in response to *Fussell v. Wilkinson*, S. D. Ohio Case No. 1:03-cv-704. Although this document contains many substantive criticisms of the medical care offered in Ohio's corrections system, it is not a part of Plaintiff's complaint, and the Court will not consider it in determining whether or not to grant a motion to dismiss for failure to state a claim.[5] *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

Defendants Valentine, Erwin, and Lazaroff therefore moved to dismiss pursuant to Fed. R. Civ Pro. 12(b)(6), for failure to state a claim upon which relief can be granted. The Sixth Circuit Court of Appeals has held that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 503 F.3d 545, 548 (6th Cir. 2007), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-554 (2007). Plaintiff's Complaint, aside from its recitation that Valentine, Erwin, and Lazeroff had a duty to care for their prisoners and failed to provide adequate medical care, does not say what these three defendants did or failed to do. This is exactly what Rule 12(b)(6) means by "failure to state a claim upon which relief can be granted". Accordingly, the Magistrate Judge was correct in finding that this case should be dismissed with respect to Defendants Valentine, Erwin, and Lazeroff.

---

[5] Appendix A does not in any case contain references to any of the defendants at issue.

**Defendant Kirk**

The Report and Recommendation found, with respect to Nurse Roger Kirk, that his medical treatment (or failure to properly treat) had not violated Plaintiff's Eighth Amendment rights. The Magistrate Judge noted that, under *Harrison v. Ash*, 539 F.3d 510 (6th Cir. 2008), such a violation must be caused by a prison official's "deliberate indifference" to a prisoner's serious medical need, where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 517. Here, the Report and Recommendation stated that Plaintiff had failed to allege that Kirk had acted with "deliberate indifference" in misdiagnosing him as suffering from the flu, rather than simple error, negligence, or incompetence.

Plaintiff, however, points to the allegations in his Complaint (Doc. 3 at 34 and 35) that upon Plaintiff's initial visit to medbay Nurse Kirk stated, without any prompting, that his condition was definitely not appendicitis. This indicates, Plaintiff argues, that Kirk knew that a substantial risk that the condition might be appendicitis existed, and consciously chose to disregard that risk. Therefore, Plaintiff claims, the requirement of *Harrison* is met.[6]

---

[6] Plaintiff also points out that the Ohio Revised Code prohibits nurses from making medical diagnoses. O.R.C. §4723.151(A). However, Ohio courts have held that nurses do not conduct diagnoses when they follow standing orders or protocols. *See, e.g., Estate of Preston v. Kaiser Permanente*, 2001 WL 1382756 (8th Dist. Nov. 8, 2001). This is, to judge from Plaintiff's Complaint, what happened here. *See, e.g.,* "It is significant to note that Nurse Kirk followed proper procedures in your

8

Attached as an exhibit to Plaintiff's Complaint is an account of the sickbay events prepared by the prison's assistant chief inspector. (Doc. 3 at 52-53.) The inspector reported:

> According to the record you were seen as an emergency for a complaint of nausea, vomiting, and diarrhea, chills, and lethargy (sluggishness). Your vital signs at that time were 96.7 temperature, pulse of 86, and respirations of 16. Your blood pressure was 128/91. Your oxygen saturation rate was 95%. Mr. Kirk gave you 30cc of Maalox and admitted you to Medical Bay for observation. At 3:45 p.m. you were released to your unit and advised to take Maalox 30cc by mouth after meals for nausea and/or vomiting. You were also instructed to return to MedBay if the signs and symptoms worsened. It is important to note that you did not complain of abdominal pain.
>
> At 5:15 a.m. the following morning (8/20) you returned to Med Bay as an emergency now complaining of right lower quadrant abdominal pain that spread down into your groin. At this time you were bending over grabbing your right side. Your vital signs at this time were 97.7 temperature, pulse of 103, and respirations of 20. Your blood pressure was 136/80. Dr. Akusoba was notified at 5:40 a.m. and you were sent to OSU Emergency Room.
>
> It is significant to note that Nurse Kirk followed proper procedures in your case. When you first presented to Med Bay you did not have abdominal pain nor were your vital signs abnormal. He observed you for several hours per Nursing Protocol. He also correctly instructed you that should your condition worsen you were to return to Med Bay.[7]

The prison inspector's account describes Roger Kirk's conduct as correct under the circumstances. Plaintiff offers two accounts (Doc. 3 at 7; 34-35). Neither presents Kirk's actions in a good light. However, they do not entirely agree. In the

---

case. [...] He observed you for several hours per Nursing Protocol." Doc. 3 at 53.

[7] The only part of this narrative which Plaintiff specifically refutes in his Complaint is its claim that he did not report abdominal pain upon his first visit to Med Bay.

first account, Plaintiff states that "[a]s the symptoms Mr. Henricks exhibited are those attributed to acute appendicitis, R. N. Kirk did a cursory exam for such; however, R. N. Kirk was not performing the usual procedure correctly. R. N. Kirk was basically applying examination techniques used to diagnose a hernia, which resulted in his ruling out appendicitis". (Doc. 3 at 7.) Later, when Plaintiff returned in apparent agony, Kirk again told him that he had the flu and to return to his housing unit and let it run its course. However, another nurse arrived, and "noted that Mr. Henricks was exhibiting all the symptoms of acute appendicitis and, after consulting with Nurse Kirk, asked to see the techniques he applied on Mr Henricks. After this second R. N. determined that Nurse Kirk was not properly examining Mr. Henricks," he began arranging Plaintiff's transfer to hospital. (Id.)

In the second account, Plaintiff did not mention his suspicions of appendicitis during his first visit, but Kirk instead volunteered the opinion unasked "that Plaintiff's complaints were 'definitely not caused by appendicitis', but merely 'the flu'." (Doc. 3 at 34.) Upon his second visit, "Nurse Kirk again proclaimed, before even examining the Plaintiff, that his pain and suffering were 'definitely not your appendix,' but 'the flu'. At Plaintiff's insistence, he was given a brief cursory examination, but again, without consulting with a licensed physician, made his conclusion that it was merely 'the flu'". (Id.)

Given Plaintiff's allegations that Kirk did perform a physical examination upon him during his first visit, but that such examination used the wrong procedure, it is clear that he is really claiming medical malpractice, not deliberate

10

indifference.  Plaintiff's statements that Kirk incorrectly applied a hernia test and determined from this that Plaintiff did not have appendicitis do not square with Plaintiff's argument now that Kirk "was consciously aware of yet disregarded a known risk."  Kirk, from Plaintiff's account, evidently did not disregard the risk of appendicitis, but instead negligently used the wrong technique and drew the wrong conclusion from it.  Plaintiff certainly does not allege that Kirk knew that he had appendicitis and ignored the danger of the condition.

If everything Plaintiff alleges is true, Kirk's erroneous determination could certainly have cost Plaintiff his life.  Such claims form a basis for medical malpractice litigation, however, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Kirk, from Plaintiff's account, did not consciously disregard the risk that Plaintiff might have appendicitis; rather, he incompetently evaluated that risk and incorrectly made a determination that Plaintiff did not.  This failure, dangerous though it may have been, does not rise to the level of a violation of Plaintiff's Eighth Amendment protection against cruel and unusual punishment.  The Magistrate Judge was therefore correct in finding that this action should be dismissed with respect to Defendant Roger Kirk.

### Conclusions

Plaintiff also, at the end of his Objections, requests that the Court "also exercise its Supplemental Jurisdiction as to any and all claims deemed to otherwise

11

rest in the State Courts" (Doc. 69 at 13.)  He cites other cases in which a court has stated that it will exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367.  However, Plaintiff has brought only a claim under 42 U.S.C. §1983.  (Doc. 3 at 25.)  He has not brought any state law claims.  Thus, there is nothing over which the Court need, or can, exercise supplemental jurisdiction.

For the reasons set forth herein, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation are hereby **OVERRULED**.  The Report and Recommendation (Doc. 61) is **ADOPTED**;  Defendants' Motion to Dismiss (Doc. 17) is **GRANTED IN PART**.  It is hereby **ORDERED** that Defendants the Pickaway Correctional Institution, the Ohio Department of Rehabilitation and Corrections, the Corrections Medical Center, James Erwin, Alan Lazaroff, Tobie Valentine, and Roger Kirk are **DISMISSED** from this action.

**IT IS SO ORDERED.**

                                            */s/ George C. Smith*
                                        **GEORGE C. SMITH, JUDGE**
                                        **UNITED STATES DISTRICT COURT**