IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


John Henricks,                                    :

                      Plaintiff              :        Civil Action 2:08-cv-580

    v.                                           :        Judge Smith

Pickaway Corr. Inst., *et al.*,               :        Magistrate Judge Abel

                      Defendants.            :


**ORDER**

On May 18, 2012, Plaintiff took the deposition of Dr. Iva Gonzales-Lockhart ("Gonzales"). Gonzales is one of two remaining defendants in this action. Plaintiff alleges that, while he was incarcerated and recovering from major abdominal surgery, Gonzales, the medical director of his institution, was deliberately indifferent to his severe pain. Specifically, he alleges that she discontinued the Neurontin he had been prescribed and substituted ineffective Motrin instead. This matter is before the Magistrate Judge on plaintiff's June 1, 2012 motions for a protective order, to conduct a status conference, and to vacate the case schedule (docs. 191, 192 and 193).

Plaintiff's motion for a protective order asserts that Defendant's counsel interfered with the deposition to the extent that he was forced to terminate it early. Specifically, he alleges:

1

- When Plaintiff's counsel attempted to question Gonzales concerning a "Kardex" prisoner medication distribution record, specifically to ask whether the Kardex demonstrated that she had eventually discontinued Plaintiff's Motrin as well, Defendant's counsel repeatedly objected on grounds that the document spoke for itself (May 18, 2012, Deposition of Iva Gonzales Lockhart, M.D., pp. 73-75, Doc. 189-1, PAGEID #1141), or that the witness had already answered the question (*id.* at 51, 70-71, 73), or that counsel was unfairly taking the witness' answers out of context (*id.* at 72), or that the witness had already provided a different explanation of events (*id.* at 73), or that counsel was "trying to get her to say something that's not reflected by the documents" (*id.* at 74).

- When Plaintiff's counsel attempted to question Gonzales concerning the prison facilities and medical procedures, Defendant's counsel repeatedly objected and deliberately coached the witness to answer that she did not know the answer or understand the question (*id.* at 21, 26 ), or complained generally that the questions were vague or overbroad (*id.* at 17).

- When Plaintiff's counsel attempted to question Gonzales generally as to the nature of medical pain management, Defendant's counsel repeatedly objected on grounds that the questions related to "medical malpractice" instead of "deliberate indifference" (*id.* at 31, 35-37).

- Defendant's counsel generally interrupted questioning and wasted deposition time with repeated objections on grounds of relevancy or that the question was too vague  (*id.* at 15, 17, 20, 21, 24, 26, 27, 30, 31, 50).

In response, Defendant's counsel denies none of these assertions.  She claims instead:

- The conduct of Plaintiff's counsel was intended to intimidate Gonzales, by insinuating that she deliberately provided substandard medical care to Plaintiff because he had been rude to her, by "interrogating her on potential medical malpractice violations", by "slamming documents down in front of her", and by standing over her in an intimidating manner.

- Defendant's counsel legitimately objected to questioning that seemed based upon a theory of "medical malpractice" instead of "deliberate indifference".

- Plaintiff failed to exhaust extrajudicial means for resolving the party's differences before filing a motion for a protective order.

Plaintiff originally filed this action on June 17, 2008, well over four years ago. For the majority of this period he proceeded *pro se*, and made numerous attempts to obtain discovery from Defendants. *See* Docs. 39-50, 53, 72, 76, 79, 81, 87, 91, 113, 127, 128, 132, 141, 142, 148, 163. *See also* Doc. 98 at 1-5 (recounting history of Plaintiff's attempts to obtain discovery to date). These attempts were generally met either with no response at all or with repeated requests for extensions of time to respond. The Court granted one motion to compel (Doc. 139), and at one point ordered Defendants to file a status report explaining how they planned to satisfy their obligations to participate in the discovery process (Doc. 98).

The Court has reviewed the deposition of Dr. Iva Gonzales-Lockhart. (Doc. 189-1.) Plaintiff's characterization of the conduct of Defendant's counsel is substantially correct. Fed. R. Civ. P. 30(c)(2) provides that counsel may make objections at deposition, but that said objections "must be stated concisely in a nonargumentative and nonsuggestive manner", and that counsel may instruct a witness not to answer only "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion" to terminate a deposition.

Here defendants' counsel persistently attempted to get plaintiff's counsel to stop asking questions she characterized as relevant to a medical malpractice claim but not to a deliberate indifference claim:

Mr. Mordarski: How do these pain medications work?

Ms. Wehrle: I'm going to object to this line of questioning First of all, this isn't a medical deliberate indifference case, and I'm making my record now, this is a deliberate indifference case, but if you can answer that question, go ahead.

. . .

Mr. Mordarski: So, I don't understand, why didn't you increase the medication instead of discontinuing it?

Ms. Wehrle: Again, I'm going to object to this line of questioning. We're now talking about a difference of opinion between the doctor and other sources. This is not a deliberate indifference issue. You're discussing medical malpractice issues. This is deliberate indifference where she just described to you in detail why she prescribed this medication, but if you can answer this question again, go ahead.

Mr. Mordarski: Wait. This has got to stop.

Ms. Wehrle: This has got to stop, your continual asking her to justify she potentially committed malpractice.

Mr. Mordarski: Why is that not relevant in this case?

Ms. Wehrle: Malpractice is not at issue.

Mr. Mordarski: I didn't say malpractice.

Ms. Wehrle: But those are the questions you're asking, malpractice questions, nothing to do with deliberate indifference.

She treated him; she saw him. This is reflected entirely throughout the records and it's reflected in her testimony, but you keep trying to harass her that she did something wrong by prescribing a different medication. Now you're going to into why she didn't up the dose because the client or the inmate asked for it. This is not a medical malpractice case. This is deliberate indifference.

Mr. Mordarski: You've got to be kidding me.

Ms. Wehrle: No, I am not kidding you. It is a deliberate indifference case, not medical malpractice. The case law is completely abundantly clear. A difference of opinion between the doctor and inmate has no relevance in a deliberate indifference case, 1983 action. No relevance, Estelle versus Gamble, all the head cases.

Mr. Mordarski: Do you want to tell me what I'm allowed to ask? What am I allowed to ask?

Ms. Wehrle: Deliberate indifference questions. Did she delay treatment? Did she deny treatment?

Mr. Mordarski: I'm going to ask my questions. If this continues we'll stop and we'll rescedhule it and get the magistrate –

Ms. Wehrle: Continuing objections now for questions that are really pertaining to medical malpractice cases.

Mr. Mordarski: Fair enough.

(*Id*. at 31-32, 35-37.)

There is a substantial difference between an objection to a question based on

relevancy and a protest that plaintiff's counsel is pursuing the wrong theory of a case.

It is also axiomatic that an attorney taking the deposition of the opposing party may ask

leading questions, or even attempt to get the opposing party to make unfavorable

admissions or inconsistent testimony. A deposition is likewise not the forum for counsel to argue that testimony should be interpreted in a certain way.

The explanations of Defendant's counsel for this course of dealing are unsatisfactory. The transcript does not demonstrate that Plaintiff's counsel was attempting to harass Dr. Gonzales. The court reporter filed an affidavit stating that she does not recall any document-slamming incident or any attempts to intimidate the witness by standing over her. *See* doc. 195-1. Defendant's argument that testimony would demonstrate only prospective medical malpractice, not deliberate indifference, is a matter for summary judgment, and plaintiff's questioning was not irrelevant to the process of obtaining the facts about what medication Plaintiff received, when, and why.

Plaintiff's counsel terminated the deposition after a further skirmish with defendants' counsel about whether a line of questions was objectionable because the questions had previously been asked and answered:

> Mr. Mordarski: Okay. But my question was, the Kardex, the page where the Neurontin was discontinued shows that the Motrin stopped well before the Neurontin stopped; is that correct?

> Ms. Wehrle: I'm going to object. The document speaks for itself and she's provided an explanation, but if you can, go ahead, answer it again.

> Mr. Mordarski: I'm going to ask you stop doing speaking objections.

> Ms. Wehrle: I'm going to ask you to stop harassing the witness.

> Mr. Mordarski: Doctor, can you answer my question?

The Witness: I'm trying to figure out because it's very - - doesn't make sense. There is no order her to stop the medication at this time. I don't have any order to stop Motrin at this time.

Mr. Mordarski: Okay. But the Kardex shows he's not getting Motrin; is that correct?

Ms. Wehrle: Objection. Asked and answered. Go ahead.

Mr. Mordarski: Doctor?

The Witness: He is receiving the Neurontin - - he is receiving the Neurontin, the tapering of the Neurontin, at the same time that he was prescribed the Motrin.
Mr. Mordarski: But that's not what my question was. My question was, the Kardex shows he's not getting the Motrin; is that correct?
Ms. Wehrle: Objection. She's asked and answered.

Mr. Mordarski: She's not answered my question. That's an improper objection. Please stop the speaking objections.

Ms. Wehrle: Well, quit asking her the same questions she's already answered.

Mr. Mordarski: Doctor, can you answer my question? The Kardex shows that he was not getting the Motrin when the Neurontin was being discontinued?

Ms. Wehrle: Objection. She already explained he was.

The Witness: Can I speak to you?

Ms. Wehrle: You have to answer his question.

The Witness: it shows that he was receiving Neurontin at the time that he - - that he was taking the Motrin.

Mr. Mordarski: Correct. And then after the 2nd of that month, the Motrin was stopped and the Neurontin continued until the 14th, and then the Neurontin stopped, correct?

Ms. Wehrle: Objection. That's a mischaracterization of her testimony.

Mr. Mordarski: I'm talking about the document, and your continued speaking objections are inappropriate.

Ms. Wehrle: Well, you're inappropriate questioning when you're trying take things out of context that she's telling you.

*Id.* at 69-72, PAGEID# 1136-1139. Defense counsel's interjections continued, and

plaintiff's counsel terminated the deposition:

Mr. Mordarski: Doctor, I'm talking about the document in front of you, Exhibit F. Exhibit F shows that the Motrin was stopped on the 2nd; is that correct.

Ms. Wehrle: Objection. She already said it doesn't show that.

Mr. Mordarski: Stop the speaking objections.

Ms. Wehrle: Stop asking her the same question.

Mr. Mordarski: She hasn't answered my question.

Ms. Wehrle: She told you why it's reflected that way, and we said the document speaks for itself.

Mr. Mordarski: Doctor, do you understand my question? You can anser it.

The Witness: Yes.

Mr. Mordarski: You understand my question, right?

The Witness: Yes.

Mr. Mordarski: And we agreed on Exhibit K, which is a Kardex, that there was an Imodium, which was a carry medication, correct?

The Witness: What was the date of this?

Mr. Mordarski: I don't know. Those are the records that I got.

The Witness: I cannot tell you - - I cannot tell you because - -

Mr. Mordarski: Doctor - -

The Witness: I need the orders that say carry or not carry. If carry, maybe he was not taking it. So, I need to see that it says carry.

Mr. Mordarski: If you look at the Kardex, and I'm asking you to look at the Kardex, okay, the Kardex indicates that it was stopped; is that correct?

The Witness: Yes.

Mr. Mordarski: And that's because there's a vertical line, correct?

The Witness: Yes.

Mr. Mordarski: The Kardex - -

Ms. Wehrle: No. Do the whole document and the word stop.

Mr. Mordarski: Please stop speaking objections.

Ms. Wehrle: You stop trying to get her to say something that's not reflected by the documents.

Mr. Mordarski: Please stop.

Ms. Wehrle: You please stop - -

Mr. Mordarski: All right. We're done. We're going to suspend the deposition. We're going to have to talk to the magistrate about the objections.

*Id.* at 73-75.

Plaintiff's June 1, 2012 motion for a protective order (doc. 191) is GRANTED in part. Plaintiff may redepose Dr. Gonzales at the federal courthouse in Columbus.

Defendant is ORDERED to pay the $429.60 court reporter and transcript fee. Plaintiff's request for attorney fees is DENIED.

Plaintiff's motion is DENIED with respect to medical records. The Court is satisfied with Defendant's explanation that the records were produced as they are now kept in archive by the state government upon an inmate's release from prison, which, though it may now produce an inconvenience for Plaintiff, satisfies the "ordinary course of business" standard.

Plaintiff's motions to conduct a status conference and to vacate the case schedule (docs. 192 and 193) are GRANTED. Counsel are DIRECTED to file a joint proposed scheduling order to the Court or schedule a telephone conference with me within fourteen (14) days of the date of this Order.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P. and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge. The motion must specifically designate the order, or part thereof, in question and the basis for any objection thereto. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/Mark R. Abel
United States Magistrate Judge