IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HENRICKS, | : | |
| | : | Case No. 2:08-CV-580 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Jolson |
| PICKAWAY CORRECTIONAL | : | |
| INSTITUTION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## PLENARY OPINION & ORDER

Several issues were raised at the final pretrial conference that must be resolved before the trial in this matter, which is scheduled for Monday, September 12, 2016. In addition, after the final pretrial conference, Defendants filed a Motion to Stay Further Proceedings Pending Appeal. (Doc. 300.) First, the Court concludes that it lacks jurisdiction over Defendant Maynard's Notice of Interlocutory Appeal. The Court **GRANTS** Defendant Maynard's Motion to Stay and **DENIES** Defendant Gonzales's Motion to Stay. (Doc. 300.) The Court **EXCLUDES** the testimony of Agnes Hurtak in the trial against Defendant Gonzales. The Court **GRANTS** Plaintiff's Motion for Leave to File a Motion *in Limine Instanter* (Doc. 291) and **GRANTS** the Motion *in Limine* to Preclude Defendants from Using Previously Undisclosed Medical Records and to Permit Plaintiff to Use Certain Medical Records at Trial. (Doc. 291-1.) Finally, the Court **GRANTS** Plaintiff's request for a preliminary jury instruction.

### I. INTERLOCUTORY APPEAL

Pre-trial orders denying qualified immunity may be immediately appealed under the collateral-order doctrine due to the rationale that qualified immunity is "an *immunity from suit* rather than a mere defense to liability" and, therefore, that immunity "is effectively lost if a case

1

is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Plaintiff points out that the rationale underlying the right to interlocutory appeal in qualified-immunity cases is not present here, because the issue on which Maynard seeks review is whether he may present a qualified-immunity defense *at trial*, not whether he may avoid trial altogether.  But unfortunately for Plaintiff, despite the probable frivolity of the appeal, the Court lacks jurisdiction to dismiss it.  Although the Seventh Circuit permits a district court to certify a *Forsyth* appeal as frivolous, *see Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989), Plaintiff concedes that the Sixth Circuit has held that there is "no authority that would permit a district court to dismiss a notice of appeal from [an order denying qualified immunity]." *Dickerson v. McClellan*, 37 F.3d 251, 252 (6th Cir. 1994).  The decision to deem an appeal frivolous and dismiss it rests with the Sixth Circuit, not this Court.  *Id.*  This Court thus lacks jurisdiction to dismiss Defendant Maynard's notice of interlocutory appeal and retains jurisdiction only over Plaintiff's claim against Defendant Gonzales.

## II.    DEFENDANTS' MOTION TO STAY

At the final pretrial conference in this case on September 2, 2016, the following exchange took place:

> [Plaintiff's Counsel]: I think our preference would be to go forward with trial against Dr. Gonzales only should the Court determine it's been divested of jurisdiction with regard to Officer Maynard as opposed to stay the claims against Gonzales pending Officer Maynard's appeal.
>
> The Court:  Ms. Wehrle.
>
> [Defendants' Counsel]: I would believe that would be appropriate in this case.

(Tr., Doc. 303 at 16.)  Notwithstanding Defendants' counsel's comments on September 2, 2016, on the next business day, September 6, 2016, Defendants filed a motion to stay the proceedings against both Defendants.  (Doc. 300.)  The following morning, Defendant Maynard filed a

2

Motion for an Emergency Stay of the District Court Proceedings. *Henricks v. Maynard*, Case No. 16-4016 (Doc. 4). In this motion, Defendant Maynard asserted that "moving first for a stay with the District Court be impracticable," although he also acknowledged that this Court indicated that it would issue its order on Friday, September 9, 2016, three days in advance of the Monday, September 12, 2016 trial date in the matter.

     Defendants previously filed a motion to certify the Rule 8 admission issue for appeal, which the Court denied at the final pretrial conference. Notwithstanding the Court's denial of that motion, as well as counsel's assertion on the record that it was appropriate to move forward in the trial against Dr. Gonzales, both Defendants now move for a stay. Acknowledging that this Court lacks jurisdiction over Officer Maynard due to his notice of interlocutory appeal to the Sixth Circuit, Plaintiff does not oppose a stay of proceedings against Officer Maynard. He asks, however, that trial proceed against Dr. Gonzales as scheduled. Because this Court has previously held that Dr. Gonzales has no right to assert qualified immunity, and thus no right to interlocutory appeal, Plaintiff argues that Dr. Gonzales should not be permitted to delay trial simply because Officer Maynard has lodged an appeal.

     Courts consider four factors when evaluating a motion to stay pending appeal: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Serv. Emps Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012). First, Defendants' argument that the Prison Litigation Reform Act allows a defendant not to file an answer after the defendant's motion to dismiss has been denied is unlikely to succeed on appeal. To the Court's knowledge, no other court has ever so held. Second, Gonzales cannot show that the absence of a

stay would irreparably harm her. If Defendants did somehow succeed on the merits of their appeal, the remedy for Dr. Gonzales would be a new trial and, therefore, the harm would be reparable.

In *Blair v. City of Cleveland*, a district court refused to stay proceedings against the city when two officers filed an interlocutory appeal on qualified-immunity grounds. 148 F. Supp. 2d 919, 923-24 (N.D. Ohio 2000). The court reasoned as follows:

> The court has allocated sufficient time in its docket for the trial of this matter at this time and cannot predict that when the case comes back from the court of appeals a similar block of time will be immediately available. The parties have assembled their witnesses and prepared their cases for trial. It has been over five years since the instant suit was filed, and almost eight years since the events at issue took place. If there was, indeed, a violation of constitutional rights, then the court is obligated to avoid needless delay of litigation, "so that victims of official misconduct may receive the vindication that is their due." *Yates*, 941 F.2d at 449 (quoting *Abel*, 904 F.2d at 396). Notwithstanding the court's decision to stay the trial of Plaintiffs' claims against Officers Tankersley and Gibson pending a resolution of their interlocutory appeal, it is in the interest of justice to proceed with the trial of Plaintiffs' claims against the City of Cleveland.

*Id.* (footnote omitted). The reasoning of *Blair* squarely applies here. This case has dragged on for eight years. The parties have prepared for trial and so has the Court. Importantly, the claim against Officer Maynard involves the period of time before Plaintiff's surgery and the claim against Dr. Gonzales involves the period after the surgery, so the testimony the Court will hear against both Defendants involves distinct facts and will not be unnecessarily duplicative for the parties, the Court, or the witnesses. *See Blair*, 148 F. Supp. 2d at 923.

Defendant Maynard's Motion to Stay Pending Appeal is **GRANTED**. Defendant Gonzales's Motion to Stay Pending Appeal is **DENIED**.

### III. AGNES HURTAK'S TESTIMONY

Plaintiff takes the position that if the claim against Defendant Maynard will not proceed to trial, Dr. Agnes Hurtak's testimony should be precluded in its entirety. Defendants take the

contrary position, arguing that the claim for damages against Dr. Gonzales is "due to the injury purportedly occasioned by the Ohio State University Medical Center (OSUMC) surgeons and/or Officer Maynard causing a delay in his examination in the emergency room." (Doc. 304 at 4.) Having reviewed the deposition transcript, the Court agrees with Plaintiff. All of the deposition testimony pertains to Dr. Hurtak's account of her examination of Plaintiff in the emergency room before his surgery and is intended to show that Defendant Maynard did not delay Plaintiff's surgery. None of it is relevant to any assessment of Plaintiff's damages caused by Dr. Gonzales's failure to prescribe Neurontin, which happened after the sequence of events to which Hurtak would testify.

Dr. Hurtak will be precluded from testifying at trial against Dr. Gonzales under Federal Rule of Civil Procedure 401 because her testimony is not relevant to any assessment of the damages Dr. Gonzales caused Plaintiff. The Court issues no decision at this time on whether Dr. Hurtak will be precluded from testifying at the later trial against Defendant Maynard.

**IV.     PLAINTIFF'S MOTION *IN LIMINE* REGARDING MEDICAL RECORDS**

Plaintiff sought the Court's permission to file a motion *in limine* after the deadline for such motions because Defendants' counsel had previously represented to the Court that it had provided Plaintiff's counsel with all of Plaintiff's medical records. (Doc. 291-1 at 1; Doc. 193 at 6.) The record contains numerous requests from Plaintiff, proceeding *pro se* before he secured counsel, to the Attorney General's office seeking his medical records, including his mental health records. (*See* Doc. 132-1 at PageID 814.) On July 15, 2010, Magistrate Judge Abel issued an order stating that Defendants' counsel had previously stated that she "originally had only one volume of Henricks['] medical records. She recently went to [Pickaway Correctional Institution] and obtained the remaining records." (Doc. 139 at 2.) This indicates that

5

Defendants' counsel had represented to the Court that she had all of Henricks' records in her position and produced them to Plaintiff.  Subsequently, after Plaintiff had retained counsel and filed a motion for discovery-related sanctions, in Defendants' response in opposition to that motion from Plaintiff on June 22, 2012, Defendants asserted:

> Plaintiff's counsel was forwarded all medical records, those from the Ohio State University Medical Center ("OSUMC") as well as ODRC records on October 27, 2011 (See Exhibit F, October 27, 2011 cover letter, attached hereto). In addition, undersigned counsel included all prior responses that were initially sent to *pro se* Plaintiff in 2009 and 2010.

(Doc. 193 at 6.)  On August 23, 2016, Defendants produced 200 pages of Plaintiff's medical records that were never previously produced when they marked them as Exhibit D-35 (Plaintiff's Mental Health Records) for trial.  Several of the records are critical to the issue of Dr. Gonzales's refusal to prescribe Neurontin to Plaintiff.

As a remedy, Plaintiff asks the Court to preclude Defendants, but not Plaintiff, from introducing Exhibit D-35 at trial.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) ("If a party . . . fails to obey an order to provide or permit discovery . . . , the court . . . may issue further just orders.  They may include . . . prohibiting the disobedient party from . . . introducing designated matters in evidence.").

Defendants' response quibbles with Plaintiff's interpretation of Rule 37(b)(2)(A)(ii), arguing that the Court did not issue any discovery order regarding these records and thus they cannot be faulted for noncompliance.  (Doc. 296 at 4.)  This is incorrect, because Defendants' counsel represented to the Court that it had already produced all records to Plaintiff.

Defendants also fault Plaintiff for not raising this issue during a January 20, 2016 status conference with Magistrate Judge King but, to state the obvious, Plaintiff did not know about these records on that date because he just received them a few weeks ago.  (*Id.* at 3.)  At that

6

time, he believed that he had all of his records in his possession. Finally, Defendants try to draw a distinction between medical files and mental health files, noting that the Ohio Department of Rehabilitation and Correction policy speaks to both types of files separately. (*Id.* at 5.) But because Plaintiff expressly requested his mental health file, this argument is unavailing.

Because Defendants should not be permitted to use evidence at trial that they failed to produce to Plaintiff until the eleventh hour, Plaintiff's Motion *in Limine* is **GRANTED**. Plaintiff will be permitted to introduce the records in Exhibit D-35 if he so chooses but Defendants will be precluded from introducing these records at trial.

V. **FINDING OF LIABILITY**

At the final pretrial conference, Defendants argued that the facts deemed admitted in the complaint do not necessarily establish liability.[1] Because the Court's prior order deeming the facts of the complaint admitted due to Defendants' failure to file an answer was not clear on this point, the Court will now take this opportunity to clarify the liability issue.

Defendants contend that it is the jury that must determine whether the facts of the complaint, now deemed admitted, are sufficient to establish Dr. Gonzales's deliberate indifference to Plaintiff's serious medical need. They cite *Anderson v. Johnson* for this proposition, which, in the context of a default judgment, states: "Even if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 194 F.3d 1311, 1999 WL 1023753, at *2 (6th Cir. Nov. 4, 1999). When Defendants cited *Anderson* in their motion for reconsideration, they replaced "court" with "[finder of fact]," apparently in an attempt to change the meaning of the sentence one hundred and eighty degrees,

---

[1] Defendants also articulated this point in their motion for reconsideration. (Doc. 293 at 3-4.)

7

as the court is most certainly *not* the finder of fact in a jury trial.  Fortunately, Plaintiff brought this falsified quotation to the Court's attention, and the Court agrees with Plaintiff that *Anderson* actually supports Plaintiff's position, not Defendants'.  It is the *Court's* role as the finder of fact to determine whether the admitted facts constitute a legitimate cause of action.

Plaintiff acknowledges in his trial brief that he did not affirmatively ask the Court to enter judgment for Plaintiff on liability. Although he argues that the Court still has legal authority to order a damages-only trial, in an abundance of caution he proposes that the Court issue an amended order eliminating the last sentence of the order which reads: "The trial will be limited to the amount of damages Defendants owe to Plaintiff." (Doc. 290 at 8.)  At the beginning of trial, Plaintiff may move for the allegations of the complaint, which the Court has already deemed admitted, to be entered into the trial record.  The Court will then read the relevant admitted facts into the record in a preliminary jury instruction.  Plaintiff would then have an opportunity to move for judgment as a matter of law under Federal Rule of Civil Procedure 50.  At that point, outside of the presence of the jury, Defendants could respond with legal argument regarding why they do not believe that the facts establish liability.  After hearing from both sides on this question, the Court will issue an order on the question of liability.

Defendants object that a Rule 50 motion is not proper and, even if it is, that allegations in the complaint actually prohibit a finding of Dr. Gonzales's deliberate indifference.  The Court finds that Rule 50 is the proper vehicle for Plaintiff to move for a finding of liability against Dr. Gonzales.  Defendants protest that they will not have been "fully heard" by the jury and thus judgment cannot be granted against them under Rule 50.  *See* Fed. R. Civ. P. 50(a)(1). This reading of Rule 50 does not take into account the unique circumstances of this case.  The Court has already deemed the facts of the complaint admitted and the jury will fully hear those facts in

8

the preliminary jury instruction.  And Defendants have certainly been fully heard on the legal question of whether Rule 8 applied, having briefed the issue extensively before the Court issued its ruling on the matter.  (Doc. 290.)  A Rule 50 motion is appropriate here.

As to Defendants' second objection, the Court will reserve a ruling on this question until trial when it definitively rules on the issue of liability.

The Court will issue an Amended Opinion and Order eliminating the following sentence from its prior opinion and order on Plaintiff's Rule 8 motion *in limine*:  "The trial will be limited to the amount of damages Defendants owe to Plaintiff."  (*See* Doc. 290 at 8.)  At trial, Plaintiff may formally move for the admitted facts to be entered into the record, at which point the Court will read the preliminary jury instruction, *see infra*, Section VI.  Plaintiff will then have the opportunity to move for judgment as a matter of law under Rule 50 and the Court will hear legal argument from both sides on the motion and issue its ruling.

### VI.    PRELMINARY JURY INSTRUCTION

Having reviewed the proposed submission of the parties, the Court now proceeds to determine the language of its preliminary jury instruction at the beginning of trial.  At the final pretrial conference, the Court granted Plaintiff's request that the Court deliver a preliminary instruction to the jury establishing that certain facts in the case are to be accepted as true by the jury.  The Court asked the parties to submit proposed instructions.

Plaintiff submitted a list of key facts in the complaint, while Defendants ask the Court to simply read the entire complaint except for what they have identified as legal conclusions.  The Court declines to read from the complaint directly because it prefers to give jury instructions in the most concise and understandable manner possible.  Additionally, some of the material in the complaint is irrelevant to the issues regarding Dr. Gonzales's treatment of Plaintiff.

9

Defendants also ask the Court to read a jury instruction regarding deliberate indifference from the Model Jury Instructions of the Ninth Circuit. But the purpose of the preliminary jury instruction is not to give the jury an exhaustive account of the relevant law; rather, it is, recognizing the unique circumstances of this case, to instruct them which facts have already been established. Because the Court will issue a complete set of jury instructions to the parties before the charging conference, and allow the parties to make objections to any such instructions at that conference, the Court will not include Defendants' proposed deliberate indifference instruction in the preliminary instruction. Finally, Defendants ask the Court to include additional language that is duplicative of the Court's general preliminary instruction to the jury, which it declines to do. Finally, at Defendants' request, the Court has removed Plaintiff's suggested language that "there are a number of facts that the parties agree about." (Doc. 301 at 12.)

The Court issues the following instruction, taken from both parties' suggested language from the complaint.

> As you might know, a lot happens in a lawsuit between when that lawsuit is filed and when the case ultimately ends up where it is today – at trial before a jury. During that process, through the work of the parties, their lawyers, and the Court, it is sometimes the case that certain facts become established, without the need for a jury to determine what those facts are. A jury's job is to decide the facts that have not been previously established. In this case, certain facts have been established before trial. I instruct you that you must accept that the following facts are true:
>
> Plaintiff John Henricks was an inmate at the Pickaway Correctional Institution. He has since been released. While incarcerated, he developed appendicitis. After reporting his symptoms to individuals at the prison, on August 20, 2006, he was transported to the Ohio State Medical Center Emergency Department for evaluation and treatment.
>
> At the OSU Medical Center, Mr. Henricks was diagnosed with acute appendicitis, which required surgery. During that surgery, Mr. Henricks suffered irreparable damage to a primary nerve in his abdomen, leading to his right leg. During Mr. Henricks' post-surgical care, a test called an "EMG" was performed, which showed a right lateral femoral cutaneous nerve injury.

This nerve injury caused Mr. Henricks increasing pain that was often unbearable. OSU neurologists prescribed the drug Neurontin for Mr. Henricks's pain. When Mr. Henricks was given Neurontin, it provided a great deal of relief from the pain. No other medication ever provided him with any pain relief at all.

After Mr. Henricks was discharged from OSU Medical Center, he was housed temporarily at the Corrections Medical Center and subsequently returned to Pickaway Correctional Institution. Defendant Dr. Ida Gonzales was one of the attending physicians providing medical care to Mr. Henricks at Pickaway Correctional Institution.

Each time that an OSU neurologist prescribed Neurontin for Mr. Henricks's nerve pain, Dr. Gonzales decided not to give the medication to him.

In October, 2006, a neurologist from OSU stated that "no amount of Ibuprofen or any other conventional NSAID would be the least bit effective for pain caused by nerve damage" and ordered Neurontin for Plaintiff.

On November 8, 2006, Dr. Gonzales discontinued Mr. Henricks's Neurontin altogether, replacing it with Ibuprofen. Dr. Gonzales was aware, or should have been aware, that ibuprofen was useless for managing the pain associated with his nerve damage.

Mr. Henricks returned to the outpatient clinics at Corrections Medical Center many times for follow up visits with doctors from OSU. On at least four occasions, neurologists from OSU ordered Neurontin for Mr. Henricks's leg pain, and each time, Dr. Gonzales refused to allow it.

Dr. Gonzales's refusal to allow Mr. Henricks to receive Neurontin caused him to suffer excruciating pains for many months. Mr. Henricks fell or collapsed many times during this period.

In the fall of 2007, Pickaway Correctional Institution hired another doctor, in addition to Dr. Gonzales, to treat inmates. When Mr. Henricks met with this new doctor and explained his nerve injury and Dr. Gonzales's refusal to permit him to have Neurontin, the new doctor ordered Neurontin for Mr. Henricks. When the new doctor left Pickaway Correctional Institution, Mr. Henricks was again treated by Dr. Gonzales. When Dr. Gonzales learned that the new doctor authorized Neurontin for Mr. Henricks, she promptly took it away.[2]

---

[2] The Court has declined to include the following paragraph from Plaintiff's proposed instruction:

> Dr. Gonzales recklessly, knowingly, and willfully neglected to administer reasonable medical care to John Henricks. Dr. Gonzales exhibited deliberate indifference to the pain and suffering of Mr. Henricks. Dr. Gonzales's reckless, knowing, and willful neglect of Mr. Henricks's medical needs resulted in permanent and irreparable physical and mental injury.

11

> I instruct you that all of these facts have already been established as true, and you are required to accept them.

## VII.   CONCLUSION

In sum, the Court lacks jurisdiction over the interlocutory appeal Defendant Maynard and the trial against him will not go forward at this time.  Defendants' Motion to Stay Further Proceedings Pending Appeal is **GRANTED** as to Defendant Maynard and **DENIED** as to Defendant Gonzales.  (Doc. 300.)    The trial on Plaintiff's claim against Defendant Gonzales will commence as scheduled on September 12, 2016.  Dr. Hurtak's testimony will be excluded at trial against Defendant Gonzales.  Plaintiff's Motion for Leave to File Its Motion *in Limine Instanter* and Motion *in Limine* are **GRANTED**.  (Docs. 291, 291-1.)  The Court issues an Amended Opinion and Order granting Plaintiff's Motion *in Limine* to Preclude Defendants from Offering Evidence or Argument Denying Facts that Have Been Legally Admitted Pursuant to Federal Rule of Civil Procedure 8(b)(6) and denying Defendants' Motion *in Limine* to Prohibit Plaintiff from Refusing to Adhere to 42 U.SC. § 1997e(g).[3] (*See* Doc. 290.)  The Court **GRANTS** Plaintiff's request for a preliminary jury instruction.

**IT IS SO ORDERED.**

                                                         s/ Algenon L. Marbley
                                                       **ALGENON L. MARBLEY**
                                                       **UNITED STATES DISTRICT JUDGE**

**DATED:  September 8, 2016**

---

Although it was mentioned in the complaint, this is a legal conclusion and, at the time that the Court reads this preliminary instruction to the jury, the Court will not yet have entered its decision on liability.  If the Court finds liability and proceeds to a damages-only trial, a similar instruction will be included in the final jury instructions.

[3] The Amended Order will be filed separately on the docket.